# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

| | |
|---|---|
| **Mark D. Anderson and Kristen D. Anderson,** | Civil No. 10-2685 (MJD/JJG) |
| **Plaintiffs,** | |
| v. | REPORT AND RECOMMENDATION |
| **Countrywide Home Loans and Bank of New York Mellon Corporation f/k/a the Bank of New York as Trustee for the Certificateholders CWMBS Inc. CHL Mortgage Pass-through Certificates Series 2005-25 and CWMBS Inc. CHL Mortgage Passthrough Trust 2005-25 Mortgage Pass-through Certificates Series 2005-25,** | |
| **Defendants.** | |

JEANNE J. GRAHAM, United States Magistrate Judge

This matter is before the Court on Defendants' Motion to Dismiss (Doc. No. 6). The Honorable Michael J. Davis, Chief United States District Judge, referred the motion to this Court for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). For the reasons set forth below, the Court recommends that the motion be granted in part and denied in part.

## I.      BACKGROUND[1]

In September 2005, Plaintiffs Mark and Kristen Anderson entered into a home mortgage loan transaction with Mortgage Electronic Registration Systems ("MERS"), as nominee for America's Wholesale Lender, for the purchase of 575 Oxford Road, Orono, Minnesota ("the

---

[1]      Because this is a motion to dismiss brought pursuant to Federal Rule of Civil Procedure 12(b)(6), the facts set forth in this section are taken from Plaintiffs' Verified Complaint.

Property"). The amount of the loan was $1,897,500. The mortgage was duly recorded on October 18, 2005 with the Hennepin County Recorder.

From the time of the transaction, Defendant Countrywide Home Loans ("Countrywide") was the servicer of the loan. In July 2008, Countrywide was taken over by Bank of America. Countrywide ceased doing business in its own name on October 20, 2009.

On September 29, 2009, MERS assigned the mortgage to Defendant Bank of New York ("Bank of New York"), as trustee of a mortgage pass-through trust ("the Trust"). The Trust is a private real estate mortgage investment conduit comprised of commercial and residential mortgages. The assignment was signed by Lawrence A. Wilford, who is both a Vice President of MERS and an attorney at the law firm of Wilford & Geske. The assignment was duly recorded with the Hennepin County Recorder.

On October 20, 2009, an Assistant Vice President of Countrywide, Serena Harman, executed a Notice of Pendency of Proceeding and Power of Attorney to Foreclose Mortgage ("Power of Attorney"), purporting to be the attorney-in-fact for Bank of New York. There is no documented authorization by Bank of New York empowering Harman to act on its behalf. The Power of Attorney authorized Wilford & Geske to foreclose the mortgage on behalf of the Trust. The Power of Attorney was duly recorded with the Hennepin County Recorder but was not filed against the Property tract index.

Meanwhile, Plaintiffs defaulted on the loan. The Complaint does not allege the details of the default. The Property was sold at foreclosure sale on December 9, 2009 to Bank of New York for $1,935,000. The foreclosure sale was subject to a six-month redemption period, which expired on June 9, 2010. Plaintiffs do not allege that they redeemed the Property.

Plaintiffs commenced this action in Hennepin County District Court on June 8, 2010, and Countrywide and Bank of New York removed the case to federal court. Plaintiffs are suing for

breach of contract, declaratory relief, fraudulent and intentional misrepresentation, negligent misrepresentation, and slander of title. Defendants now move to dismiss all claims pursuant to Federal Rule of Civil Procedure 12(b)(6).

## II.     STANDARD OF REVIEW

Dismissal under Rule 12(b)(6) is proper when a plaintiff fails "to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). To survive dismissal, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). Allegations that are "merely consistent with" liability are insufficient to create plausibility. *Id.* (quoting *Twombly*, 550 U.S. at 557). Nor will a mechanical recitation of the elements suffice. *Twombly*, 550 U.S. at 555.

Generally, the Court may not consider matters outside the pleadings on a motion to dismiss. *See Porous Media Corp. v. Pall Corp.*, 186 F.3d 1077, 1079 (8th Cir. 1999). But the Court may consider matters of public record, judicial orders, documents necessarily embraced by the pleadings, and exhibits attached to the pleadings, as long as those materials do not contradict the complaint's allegations. *See id.*

## III.    DISCUSSION

### A.     Breach of Contract

Plaintiffs allege that Countrywide and the Trust breached their duty of good faith and fair dealing by foreclosing on the Property without being seized of the requisite title, without establishing a proper chain of assignment for the mortgage, without following the foreclosure by

advertisement process, without following the pooling and servicing agreement that governs the Trust, and without a valid assignment from MERS.

"Under Minnesota law, every contract includes an implied covenant of good faith and fair dealing requiring that one party not 'unjustifiably hinder' the other party's performance of the contract." *In re Hennepin County 1986 Recycling Bond Litig.*, 540 N.W.2d 494, 502 (Minn. 1995) (citations omitted). The duty to deal fairly and in good faith applies only to specific contractual terms; there is no "free-floating duty of good faith unattached to the underlying legal document." *Avritt v. Reliastar Life Ins. Co.*, 615 F.3d 1023, 1031 (8th Cir. 2010) (quotation omitted). The only contracts between Plaintiffs and Defendants are the note and mortgage. Plaintiffs have not identified any specific contractual term that Defendants allegedly violated or hindered Plaintiffs from performing. Rather, Plaintiffs allege that Defendants violated some amorphous duty by their conduct during the foreclosure proceedings. This does not rise to a breach of the implied covenant of good faith and fair dealing.

Moreover, to ultimately prevail on this claim, Plaintiffs will have to "establish bad faith by demonstrating that the adverse party has an ulterior motive for its refusal to perform a contractual duty." *Minnwest Bank Cent. v. Flagship Props. LLC*, 689 N.W.2d 295, 303 (Minn. Ct. App. 2004). Although the present motion is one to dismiss, not for summary judgment, Plaintiffs have not alleged any facts supporting an inference that Defendants acted in bad faith or with an ulterior motive. Consequently, for each of the reasons set forth above, Plaintiffs' breach of contract claim should be dismissed.

### B.   Declaratory Relief

Count 2 seeks a declaratory judgment that the foreclosure is invalid on four grounds: (1) the Power of Attorney was deficient because it was not recorded against the Property tract index or signed by Bank of New York; (2) MERS did not have the right to execute the

September 29, 2009 assignment to the Trust because the Trust already held the underlying debt instrument according to the terms of the Trust's governing document; (3) Wilford executed the September 29, 2009 assignment without having any authority to do so; and (4) the Trust did not have the right to foreclose because it did not record intermediate assignments of the mortgage under Minn. Stat. § 580.02.

### 1. The Power of Attorney

Plaintiffs assert that the Power of Attorney was deficient in two respects: it was not signed by the Bank of New York, and it was not recorded against the Property tract index.

#### a. The Property Tract Index

Plaintiffs' counsel made and lost the argument that a power of attorney must be recorded against a property tract index in two other cases: *Molde v. CitiMortgage, Inc.*, 781 N.W.2d 36, 39-44 (Minn. Ct. App. 2010); and *Peterson-Price v. U.S. Bank National Association*, Civil No. 09-495, 2010 WL 1782188, at *11 (D. Minn. May 4, 2010) (Montgomery, J.). In *Molde*, an officer of the mortgagee bank executed a limited power of attorney authorizing Wilford & Geske to execute foreclosure documents on the bank's behalf. 781 N.W.2d at 38. The power of attorney was recorded in Dakota County but was not filed against the property tract index. *Id.* The court held that Minn. Stat. § 580.05 does not require the recording of a power of attorney to conduct a foreclosure in the property tract index. *Id.* at 43 ("Thus, we conclude that the . . . legislature did not intend to require that a document evidencing the authority of an attorney-in-fact to initiate a foreclosure by advertisement be recorded in the tract index. Accordingly, CitiMortgage was not required to record the 2004 Limited Power of Attorney in the Dakota County tract index.").

The facts of *Peterson-Price* are almost identical to the present case. In *Peterson-Price*, the power of attorney was signed by an employee of the loan servicer and declared that the servicer was the attorney-in-fact for the mortgagee, which was a trustee of a securitized

investment trust. 2010 WL 1782188, at *11. The power of attorney, which authorized a law firm to conduct the foreclosure, was recorded in the Hennepin County Recorder's Office but not against the property tract index. *Id.* Here, the Power of Attorney was signed by an employee of Countrywide (the servicer) as the attorney-in-fact for the Bank of New York (the mortgagee) and empowered the law firm of Wilford & Geske to conduct the foreclosure. The Power of Attorney was recorded in the Hennepin County Recorder's Office. In accordance with *Molde* and *Peterson-Price*, the Court finds that the Power of Attorney was not required to be filed against the Property tract index.

### b. Requirement that a Principal Execute the Power of Attorney

Plaintiffs next argue that the Power of Attorney authorizing Wilford & Geske to conduct the foreclosure was not valid because it was not executed by the mortgagee, Bank of New York, but by Harman, an officer of the servicer, Countrywide. While the Power of Attorney describes Harman as the attorney-in-fact for Bank of New York, there is no separate document evidencing this grant of power by the principal, Bank of New York, according to Plaintiffs' allegations. An authorization for a person to act as an attorney-in-fact must be dated and signed by the principal. Minn. Stat. § 523.01. Plaintiffs allege they have searched and not found any document authorizing Harman to act as the attorney-in-fact for Bank of New York. At the hearing on the motion, Bank of New York represented through counsel that Harman had the authority to act as its attorney-in-fact. But this representation contradicts Plaintiffs' allegations, which the Court is bound to accept as true.

*Peterson-Price* did not address this precise argument raised by Plaintiffs, but *Molde* implicitly supports Plaintiffs' position. Two powers of attorney were executed in *Molde*, one in 2004 and one in 2007. 781 N.W.2d at 38. The 2004 power of attorney was executed by the mortgagee as the principal, authorizing the law firm to act as its attorney-in-fact. *Id.* The 2007

6

power of attorney was executed by the attorney-in-fact and described the mortgagee's intent to foreclose the mortgage. *Id.* The court in *Molde* said it was the *first* power of attorney that granted the law firm the authority to foreclose the mortgage on behalf of the mortgagee. *Id.* In this case, according to Plaintiffs' allegations, there is no power of attorney akin to the 2004 power of attorney in *Molde*. That is, there was no power of attorney executed by Bank of New York authorizing Harman or Countrywide to act as its attorney-in-fact.

If Harman lacked the authority to execute the Power of Attorney on Bank of New York's behalf, as Plaintiffs have alleged allege, then the Power of Attorney was invalid. Defendants have not offered any other basis on which to find the Power of Attorney effective. In this respect, therefore, Plaintiffs have adequately alleged a deficiency in the foreclosure proceedings potentially invalidating the foreclosure sale, *see Sheasgreen Holding Co. v. Dworsky*, 231 N.W. 395, 396 (Minn. 1930), and dismissal of this aspect of their claim is not recommended.

### c. The End of Countrywide

Although not pled as a separate ground for relief, Plaintiffs point out that Countrywide ceased doing business on October 20, 2009, the same day Harman purportedly executed the Power of Attorney. This gives the Court no pause. Even accepting Plaintiff's allegations as true, it is reasonable to infer that the purported Power of Attorney was executed before the cessation of the business day.

### 2. The Pooling and Service Agreement

Plaintiffs contend that MERS did not have the right to execute the September 29, 2009 assignment to the Trust, because according to the terms of the Trust's governing document, a Pooling and Servicing Agreement (PSA), the Trust already held the underlying debt instrument. This argument is grounded in New York trust law and a provision of the PSA stating that the Trust ceased accepting contributions in November 2005, several years before the assignment

from MERS in September 2009. Thus, Plaintiffs argue, any assignment of the mortgage or endorsement of the note made after November 2005 violates the chain of endorsement and assignment specified in the PSA.

Faced with a similar argument in *Peterson-Price*, the court concluded that an assignment's compliance with the chain of assignment mandated by a PSA was not relevant to the validity of the assignee's interest under the Minnesota Recording Act. 2010 WL 1782188, at *10. Plaintiffs have cited no authority that an assignment made in contravention of a PSA is invalid. Moreover, Plaintiffs do not have standing to challenge the validity of the assignment to the Trust because they are not parties to the PSA. *See Greene v. Home Loan Svcs., Inc.*, Civ. No. 09-719, 2010 WL 3749243, at *4 (D. Minn. Sept. 21, 2010) (Frank, J.).

The Court concludes that Plaintiffs' challenge to the September 29, 2009 assignment as a breach of the PSA's terms is not a cognizable cause of action and should be dismissed. Whether the Trust may be subject to a penalty for accepting a late contribution under federal tax law is a separate matter.

### 3. Wilford's Authority to Execute the September 29, 2009 Assignment

Plaintiffs argue that the assignment from MERS to the Trust was invalid because Wilford, who executed the assignment, is both a Vice President of MERS and the attorney who conducted the foreclosure. There is no support under Minnesota law for Plaintiff's position. Wilford did not sign the Assignment in his capacity as an attorney with Wilford & Geske, but as a Vice President of MERS who had the authority to act on behalf of MERS. In this capacity, his execution of the assignment was valid.

### 4. Compliance with Minn. Stat. § 580.02

Plaintiffs next assert that Bank of New York did not have the power to foreclose because it did not record intermediate assignments of the mortgage under Minn. Stat. § 580.02. This

statute mandates certain conditions for foreclosure, including "that the mortgage has been recorded and, if it has been assigned, that all assignments thereof have been duly registered." Minn. Stat. § 580.02(3). MERS assigned the mortgage to Bank of New York on September 29, 2009, and Plaintiffs concede that the assignment was duly recorded. There are no allegations of other, intermediate assignments. Accordingly, Plaintiffs have failed to state a claim under Minn. Stat. § 580.02.

### C. Intentional Misrepresentation

Count 3 of Plaintiffs' Complaint alleges that Countrywide and Bank of New York fraudulently misrepresented they had title to and a security interest in the Property and the right to foreclose on the Property. The elements of fraudulent misrepresentation are:

> (1) there was a false representation by a party of a past or existing material fact susceptible of knowledge; (2) made with knowledge of the falsity of the representation or made as of the party's own knowledge without knowing whether it was true or false; (3) with the intention to induce another to act in reliance thereon; (4) that the representation caused the other party to act in reliance thereon; and (5) that the party suffered pecuniary damage as a result of the reliance.

*Hoyt Props., Inc. v. Prod. Res. Group, L.L.C.*, 736 N.W.2d 313, 318 (Minn. 2007). To adequately allege an intentional misrepresentation, "a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b). "To satisfy the particularity requirement of Rule 9(b), the complaint must identify the who, what, where, when, and how of the alleged fraud." *United States ex rel. Joshi v. St. Luke's Hosp., Inc.*, 441 F.3d 552, 556 (8th Cir. 2006). Claims of misrepresentation, whether intentional or negligent, are grounded in fraud and thus must satisfy Rule 9(b). *McGregor v. Uponor, Inc.*, Civ. No. 09-1136, 2010 WL 55985, at *3 (D. Minn. Jan. 4, 2010) (Montgomery, J.).

Here, Plaintiffs' factual allegations establish that Bank of New York had title to and a security interest in the Property. The only possible defect with the foreclosure proceedings is the Power of Attorney executed by Harman. But even assuming Harman falsely represented that she was Bank of New York's attorney-in-fact, there are no factual allegations creating a reasonable inference that the representation caused Plaintiffs to act in reliance. Thus, the "how of the alleged fraud" is missing, and Plaintiffs have not stated a claim for intentional misrepresentation.

### D.  Negligent Misrepresentation

"The elements of negligent misrepresentation are (1) a duty of reasonable care in conveying information; (2) breach of that duty by negligently giving false information; (3) reasonable reliance on the misrepresentations, which proximately caused the injury; and (4) damages." *Peterson-Price*, 2010 WL 1782188, at *12 (citing *Smith v. Brutger Cos.*, 569 N.W.2d 408, 413 (Minn. 1997)). Plaintiffs allege that Countrywide and Bank of New York negligently misrepresented that they had the right to foreclose on the Property. Again, the only possible negligent misrepresentation is Harman's representation that she was Bank of New York's attorney-in-fact when she executed the Power of Attorney. But Plaintiffs have failed to plead facts supporting an inference that they reasonably relied on the misrepresentation and that their reliance caused them injury. Plaintiffs therefore have not stated a claim for negligent misrepresentation.

### E.  Slander of Title

A slander of title claim is comprised of four elements: (1) a false statement concerning real property; (2) publication of the false statement to others; (3) maliciousness in publishing the false statement; and (4) pecuniary loss in the form of special damages. *Paidar v. Hughes*, 615 N.W.2d 276, 279-280 (Minn. 2000). Plaintiffs allege that Defendants made three false statements concerning the Property: (1) that Countrywide or MERS had an interest to assign in the

Mortgage; (2) that Wilford lawfully assigned the mortgage to the Trust as a Vice-President of MERS; and (3) that the Trust had the right to foreclose on the Property.

Contrary to Plaintiffs' position, the factual allegations of the Complaint, viewed in light of the legal conclusions drawn herein, show these alleged statements to be true, not false. First, as the nominal mortgagee, MERS had an assignable interest in the mortgage. Second, Wilford's execution of the assignment from MERS to the Trust was valid. Third, as the legitimate assignee of the mortgage, the Trust had the right to foreclose on the Property. Accordingly, Plaintiffs' slander of title claim should be dismissed.

## IV.   RECOMMENDATION

Based on all the files, records, and proceedings herein, **IT IS HEREBY RECOMMENDED** that Defendants' Motion to Dismiss (Doc. No. 6) be **GRANTED IN PART** and **DENIED IN PART** as set forth fully herein.

Dated: April 7, 2011

　　　　　　　　　　　　　　　　　　　　s/ *Jeanne J. Graham*
　　　　　　　　　　　　　　　　　　　　JEANNE J. GRAHAM
　　　　　　　　　　　　　　　　　　　　United States Magistrate Judge

## NOTICE

Pursuant to District of Minnesota Local Rule 72.2(b), any party may object to this Report and Recommendation by filing and serving specific, written objections by **April 25, 2011**. A party may respond to the objections within ten days after service thereof. Any objections or responses shall not exceed 3,500 words. The District Judge will make a de novo determination of those portions of the Report and Recommendation to which objection is made. The party making the objections must timely order and file the transcript of the hearing unless the parties stipulate that the District Judge is not required to review a transcript or the District Judge directs otherwise.